In the Matter of the Petition of a Majority of the Trustees of SCHUYLER'S STEAM TOW–BOAT COMPANY, a Corporation, for its Dissolution.

*Injunction by a State court against persons libeling boats in a Federal court — when a receiver takes title — constructive possession — contempt.*

Frank D. Sturges was appointed, on July 31, 1891, a temporary receiver of a steam tow-boat corporation by an order which was filed and entered the next day. On August 4, 1891, he filed his bond as receiver.    After the filing of the order, but before the bond was filed, Michael Moran proceeded in admiralty and filed libels in the United States District Court against the boats of the corporation, against which other libels were subsequently filed.

At Special Term the Supreme Court of the State of New York restrained the libellants from proceeding further.

*Held*, that the court had such power under section 2423 of the Code of Civil Procedure.

That when the receiver filed his bond his title related back to the time of his original appointment.

That at the time the libels were filed the property was in the custody of this court, whose duty it was, in equity, to protect the property from seizure by other parties, whether the proceedings were instituted by such parties in a State or in a Federal court.

That the injunction was proper, since it was not directed to a Federal court, but to parties who were merely creditors of the corporation.

That the court which had obtained jurisdiction first could and would retain it to the end.

That the fact that the receiver had not taken actual possession of the boats when the libels were filed was not material, since the property was then, at least, in the constructive possession of the court.

*Semble*, that if the libellants, when they made their seizure, did not know that a receiver had been appointed, they were not guilty of contempt in taking possession of the property.

APPEAL by Michael Moran, Peter Cahill, Cynthia Cahill and Jarvis Masters from an order of the Supreme Court, entered in the office of the clerk of Albany county on the 8th day of February, 1892, enjoining the appellants from taking any further proceedings in actions in the United States District Court for the Eastern District of New York, in which they had filed libels against certain steamboats of the Schuyler Steam Tow-Boat Company, and also enjoining them from taking any proceedings looking to the condemnation or sale of the steamboats.

Frank D. Sturges was appointed temporary receiver of the Schuyler Steam Tow-Boat Company, on July 31, 1891, by an order of the Supreme Court of the State of New York, filed and entered August 1, 1891. He filed his bond August 4, 1891. Between the time of filing the order and of filing the bond, and on August 1, 1891, the appellant Moran libeled some of the boats by proceedings taken in the United States District Court, and the marshal took possession thereof. The libels of the Cahills and of Masters were filed on August third. On August 4th and 5th, 1891, and on subsequent days, many other libels were filed.

The injunction order was directed against all these persons who had filed libels.

*Joseph F. Mosher*, for Michael Moran and others, appellants.

*James W. Eaton*, for Frank D. Sturges, petitioner, respondent.

The following opinion was delivered at the Special Term:

PUTNAM, J.:

It is settled by the Court of Appeals in a similar case (*Matter of the Christian Jensen Company*, 40 N. Y. St. Rep., 621) that the filing of the original petition, and entry of the order thereon, appointing Frank D. Sturges receiver of the Schuyler Steam Towing Company, at once vested the title of the property of said corporation in said receiver. He could not act until the giving of his bond, but on filing such bond his title related back to the date of his appointment. The court held in the case cited that after the filing of the petition and entry of the order, the title of the property being in the receiver, it was in the custody of the law, and the court had the power to prevent any interference with it in any action, and its dissipation or removal by writ of replevin or attachment. (See, also, Gluck and Becker on Receivers, § 45, note; *Matter of John Berry*, 26 Barb., 55; *Smith* v. *The N. Y. Consolidated Stage Co.*, 18 Abb. Prac. Rep., 420; *Atlas Bank* v. *Nahant Bank*, 23 Pick., 480; *Matter of Mallory*, 18 N. Y. St. Rep., 499.)

In the Jensen case (*supra*), the court sustained an order restraining the defendant from proceeding in replevin or attachment levied upon the property after the filing of the petition and entry of the order appointing a receiver, but before the filing of his bond.

There is no dispute about the facts of this case. It is conceded that the petition was filed, and that an order appointing a receiver was granted before any of the libels were filed; and hence, when said libels were, in fact, filed, the title of the property in question was in the receiver as an officer of the court. The property was in the constructive possession of the court. Hence, if the property in question had been seized under process issued from a State court by the defendant, no question would arise as to the power of this court to restrain the defendants from further proceeding.

Can this court also restrain defendants from proceeding in the Federal court?

I shall be unable to discuss the very many authorities to which I have been cited, but I have examined and considered most of them.

I have finally reached the conclusion that this court having, through its receiver, taken possession of the property in question, before the libels of the defendant were filed in the United States Court, can protect the property so in its possession as against process issued from the Federal court as well as from a State court. I think this power is conferred upon this court by section 2423 of the Civil Code. (*Matter of the Christian Jensen Co., supra.*) That section confers upon the Supreme Court in this proceeding the same power that exists in a court of equity to restrain parties from proceeding in other courts, State or national.

It is true that the Supreme Court of the State probably cannot stay proceedings in the Federal courts, but it may stay parties in any action in the Federal courts from proceeding, at least, before judgment therein. (See *Dinsmore* v. *Neresheimer*, 32 Hun, 206; *Dehon* v. *Foster*, 4 Allen, 545; *Atty.-Gen.* v. *Insurance Co.*, 77 N. Y., 272–277; *Vail* v. *Knapp*, 49 Barb., 308, 309; *Clafflin & Co.* v. *Hamlin*, 62 How., 284; note to § 111, High on Injunctions, p. 92; *Barry* v. *Brune*, 71 N. Y., 261; *People* v. *Erie R. R. Co.*, 36 How., 132.)

The above cases establish the doctrine laid down in *Dehon* v. *Foster* (*supra*), in which case the court remarked: " The authority of this court as a Court of Chancery, upon a proper case being made, to restrain persons within its jurisdiction from prosecuting suits either in the courts of this State, or of other States, or foreign countries, is clear and indisputable. In the exercise of this power, courts of equity proceed, not upon any claim of right to interfere with or control the course of proceedings in other tribunals, or to prevent them from adjudicating on the rights of parties when drawn in controversy and duly presented for their determination. But the jurisdiction is founded on the clear authority vested in courts of equity over persons within the limits of their jurisdiction, and amenable to process, to restrain them from doing acts which will work wrong and injury to others, and are, therefore, contrary to equity and good conscience. As the decree of the court in such cases is pointed solely at the party, and does not extend to the tribunal where the suit or proceeding is pending, *it is wholly immaterial that the party is prosecuting his action in the courts of a foreign State or country.*"

The granting of an injunction, as asked for by the moving party,

does not at all conflict with the doctrine as laid down in such cases as that of *Riggs* v. *Johnson County* (6 Wall., 166) and kindred cases, because,

*First*. The injunction asked for herein is not to be directed to the Federal court, but to a party to an action therein to prevent him, as a creditor of the Schuyler Steam Tow-Boat Company, from interfering with the property in the constructive possession of the State court through its receiver, and which that court so obtained possession of before the defendants' libels were filed; and,

*Second*. Because the State court had obtained jurisdiction; obtained title to the property before defendants' libels were filed. The doctrine is well established in both State and Federal courts, as a general rule, that the court which first obtained jurisdiction will retain it to the end. (See *Riggs* v. *Johnson County*, 6 Wall., 196; *Rio Grande R. R. Co.* v. *Gomila*, 132 U. S., 485; *Wallace* v. *McConnell*, 13 Peters, 136–151; *Taylor* v. *Taintor*, 16 Wall., 370; *Taylor* v. *Carryl*, 20 How. [U. S.], 583; *Hagan* v. *Lewis*, 10 Peters, 400; *Beaston* v. *Bank*, 12 id., 102; *Wiswall* v. *Sampson*, 14 How. [U. S.], 52; *Williams* v. *Benedict*, 8 id., 109.)

In my judgment, it makes no difference, as to the right of the receiver to hold the property in question. that he had not taken actual possession at the time the libels were filed. Under the doctrine settled in the Christian Jensen case (*supra*), when the libels were filed and the property attached thereunder the receiver had the actual title. The property was then in the constructive possession of the court. This case differs from those cited by the defendants where conflicts have arisen between marshals and sheriffs under executions or attachments, in which those authorities hold that the officer who first takes actual possession will hold the property. In those cases the title of the property was in the debtor. The sheriff or marshal having the execution or attachment did not acquire title to the property until the seizure by him, and hence the one first seizing held it.

But in this case, by the order of the Supreme Court, *the title at once vested in the receiver before its seizure by the marshal.* When the marshal undertook to take the property it was in the legal custody of the court. Without attempting to discuss the various cases cited by the defendants, I think them different from this in the

regard above mentioned. In any event, I feel bound by the holding of the Court of Appeals in the Jensen case. There a petition was filed and an order appointing a receiver entered on the tenth, in the morning, and in the afternoon of the same day the property was replevined and attached, and afterwards the receiver filed his bonds. Of course, the receiver had not taken actual possession when the attachment was levied. Yet the Court of Appeals sustained an order enjoining the defendant from proceeding under his attachment and replevin, holding that the order, when entered, "*was effectual to appoint the receiver, and the moment he was appointed he became an officer of the court, and from that time the property of the corporation was in* custodia legis, *and the court had the power to preserve and protect it.* * * * It, therefore, follows that when this property was attached and replevined on the 11th day of March *the title was in the receiver and the property was in the custody of the law,* and the court had power to prevent any interference with it *in any action,* and its dissipation and removal by writ of replevin or attachment." (See, also, Beach on Receivers, §§ 200, 201; *Wilson* v. *Allen,* 6 Barb., 542, 545, 546; *Storm* v. *Waddell,* 2 Sand. Ch., 494.)

The latter holds *that the order appointing the receiver in itself is equivalent to an actual levy on the property.*

I think it is the general doctrine that an order being made to appoint a receiver on his filing the bond required by the order, his title relates back to the day of the entry thereof. In Maryland a different doctrine prevails, and hence the case of *Farmers' Bank* v. *Beaston* (7 Gill & Johns., 428), cited by the defendants, does not apply.

The doctrine so laid down in the Jensen case, and other cases above cited, that the title vested in the receiver on entering the order, and from that time the property was in the custody of the court, and it had power to prevent any interference with such property in *any action,* means an action in the Federal as well as one in a State court. The title being vested in the receiver on the entry of the order, and hence in the hands of the court, may not be interfered with afterwards by any creditor *in any court, State or national.*

I am unable to perceive that the case of *Varnum* v. *Hart* (119 N. Y., 101) has any bearing upon this. There the sheriff had

seized the property and had it in his possession before the appointment of a receiver. In *Walling* v. *Miller* (108 N. Y., 173), although the levy was before the appointment of a receiver, before the sale the receiver had obtained actual possession and the court held that such sale, the property being in the actual possession of the receiver, was irregular and void. The same doctrine was held in *Wiswall* v. *Sampson* (14 How. [U. S.], 52). These cases do not bear on a case like this, where the appointment of a receiver and his actual title was prior to any levy.

The receiver not having taken actual possession of the property at the time it was seized by defendants, it may be that they are not guilty of any contempt. Defendants were not bound to know that the order in this case appointing a receiver had been granted. It is not conceded that at the time the libels were filed and the property seized the defendants had knowledge that such property was in the custody of the Supreme Court of the State. In the absence of such knowledge, it is not probable that there could be any contempt. I do not think that the case of the *Albany City Bank* v. *Schermerhorn* (9 Paige, 372) aids the defendants. There the question was as to the contempt of the party proceeded against, and the case does not seem to bear on the questions involved here. In that case the court held that where a receiver appointed in a creditor's suit is entitled to the personal property of the defendant and the rents and profits of his real estate, if the defendant neglects to make an assignment, so as to give the receiver a legal title to the property, the court, upon a bill filed by the receiver, will protect his rights against sheriffs and others who have seized upon the property to prevent his obtaining possession thereof. *In other words, secure to the receiver the possession of the property.* Such is the object of the motion.

Without further comment upon the various cases cited by the counsel, I think the holding of the courts in the cases cited determines that, on granting the order appointing the receiver in this proceeding, and the entry of said order, the receiver at once became vested with the title of the property of the corporation, and such property from that time being deemed in the custody of this court, such court may and should protect it, and may and should enjoin defendants from proceeding further in the actions commenced by them as

against the said property. And this notwithstanding the defendants are proceeding by filing libels in the Federal court in admiralty. (See *Taylor* v. *Carryl*, 20 How. [U. S.], 583, 584, 599.)

The motion heretofore made by the receiver in the Federal court, and the order granted thereon, is not an estoppel, especially as the court did not assume to pass upon the merits of the application.

The chattel mortgage upon the property, inasmuch as the mortgagee does not elect to take possession by foreclosure, leaves an equity of redemption in the corporation which passed to the receiver, and which he can protect. (*Randall* v. *Dunbar*, 14 W. Dig., 332; *West* v. *Crary*, 47 N. Y., 423; *Porter* v. *Parmley*, 52 id., 188.)

On the whole, I think the motion should be granted. As the matter is of much importance the receiver should submit the proposed order to counsel for defendants before the same is sent me for my signature.

MAYHAM, P. J., and HERRICK, J., concurred; PUTNAM, J., not acting.

Affirmed on opinion of PUTNAM, J., trial judge in court below.